# DISTRICT COURT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | |
| ) | **Criminal Action No. 2017-0005** |
| **GILROY ELCOCK,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
**Alphonso G. Andrews, Jr., Esq.,**
St. Croix, U.S.V.I.
*For the Government*

**Renee D. Dowling, Esq.,**
St. Croix, U.S.V.I.
*For Defendant*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on Defendant's "Motion to Suppress," in which Defendant seeks to suppress any evidence uncovered in the search of his Samsung Galaxy Note III cell phone and Apple iPad due to alleged violations of his Fourth Amendment rights. (Dkt. No. 11). The Government filed an Opposition, (Dkt No. 17), and a suppression hearing was held on April 4, 2017. For the reasons discussed below, the Court will deny Defendant's Motion.

### I.  FACTUAL BACKGROUND

Defendant Gilroy Elcock ("Defendant" or "Elcock") was charged in a twelve count Indictment on February 21, 2017. (Dkt. No. 1). The Indictment charges Defendant with multiple counts of Production of Child Pornography, in violation of 18 U.S.C. § 2251(a); Possession of Child Pornography, in violation 18 U.S.C. § 2252(a)(4)(B); Aggravated Rape First Degree, in violation of 14 V.I.C. § 1700(a); and Aggravated Rape Second Degree, in violation of 14 V.I.C. §

1700a(a). (*Id.*).

At the suppression hearing, Virgin Islands Police Department ("VIPD") Officer Vanessa Richardson-Fieulletaeu and Lieutenant Naomi Joseph testified, and the Government entered three exhibits—an advice of rights form signed by Defendant; a consent to search form signed by Defendant; and a video recording of Defendant's interview conducted at the Mars Hill police station on April 29, 2014. The following facts have emerged from the record before the Court.[1]

The instant case arises from the alleged sexual contact between Defendant and two minor female sisters—sixteen-year-old J.S., and twelve-year-old J.J.S. Defendant was in a relationship with L.W., the girls' mother, and living in their home. That relationship ended on April 15, 2014, after L.W. noticed some peculiar behavior between Defendant and her minor daughters. L.W. was later informed by a friend of Defendant's that Defendant was in possession of a sexual video recording on one of his electronic devices, which the friend believed depicted one of L.W.'s daughters.

L.W. reported the matter to the VIPD on April 24, 2014, the same day she learned of the video. On April 29, 2014, VIPD Officers Naomi Joseph, Vanessa Richardson-Fieulletaeu and Jeffrey Nisbett went, in plain clothing, to the home of Defendant's parents where Defendant was residing. Defendant was 41 years old at the time. One of the officers blew the vehicle's horn, and Defendant came out of the residence. The officers had their sidearms, but did not draw them. Lt. Joseph advised Defendant of the complaint against him, and told him they needed to speak with

---

[1] The Court bases the background factual discussion in this section on the record established at the suppression hearing. Unless otherwise specifically indicated, the facts recounted herein come from the testimony of Officer Richardson-Fieulletaeu. The Court provides this information solely for the purposes of this pretrial motion, ever mindful that Defendant Elcock is presumed innocent until proven guilty. Most of the facts discussed herein are alleged, but at this stage not conceded or proven beyond a reasonable doubt to the factfinder.

him. The other officers remained off to the side. Defendant wanted to "clear his name" and left voluntarily with the officers. He was frisked for weapons prior to being placed in the vehicle. At Lt. Joseph's request, Defendant brought his Galaxy Note III cell phone and Apple iPad. The officers left the home with Defendant and transported him to the Criminal Investigation Bureau in Frederiksted.

Once at the station, Defendant was advised of his rights, and signed a waiver of those rights. Defendant then gave a video statement, beginning a little after 9:00 p.m. and lasting for over an hour.[2] The same three officers who went to the home of Defendant's parents were present for the video interview, and testimony indicated that they did not force or threaten Defendant to obtain his consent to search his electronic devices. Lt. Joseph and Officer Richardson-Fieulletaeu both testified that, during the interaction, the officers did not raise their voices, block or lock the doors to the room, place Defendant under arrest, handcuff Defendant, or point their weapons at Defendant. A copy of the video interview was introduced into evidence as Government's Exhibit 3.

The Court's review of the video interview revealed the following. Defendant was responsive to the officers, and never indicated that he did not want to speak to them. At the beginning of the video, Defendant clearly answers "yes ma'am" when Lt. Joseph asked if his rights were read to him and if he understood his rights, and he then proceeded with the interview. During the recorded interview, Defendant consented to the search of his phone and iPad. This consent came immediately following a question regarding whether Defendant had engaged in sexual relations with the minor females. Lt. Joseph asked on video if Defendant would have any problem

---

[2] The interview tape is interrupted midway through, reportedly due to a power failure. The actual questioning appears to have lasted nearly an hour. During the interview, the officers offered and provided Defendant water, but did not offer or provide food.

3

with the officers checking his phone, to which he immediately responded, "you can go ahead and check if you want." At no time during the video interview did Defendant circumscribe the scope of his consent.[3]

Officer Richardson-Fieulletaeu testified that Defendant signed a consent to search form, providing consent to search his Galaxy Note III and Apple iPad. The form indicates that it was signed at 9:33 p.m. (Government's Exhibit 2). On the video, Defendant can be seen signing a document, after Officer Richardson-Fieulletaeu explains that the document memorializes Defendant's permission to search his phone. The form indicates that consent is being given to the "search of the above described Note3/i[P]ad by members of the Virgin Islands Police Department, Government of the Virgin Islands." (Government's Exhibit 2).

Officer Richardson-Fieulletaeu characterized the encounter as friendly, and stated that there had been laughing. Lt. Joseph described the station-house interaction as cordial and testified that Defendant smiled and laughed during the interaction. She further stated that Defendant was cooperative and answered the officers' questions.

The Court's review of the interview tape (Government's Exhibit 3), corroborates the officers' characterization of the interview. The video depicts Defendant with a calm, collected demeanor and he appears to understand what is going on throughout. He makes jokes and openly engages in dialogue with the officers. At one point, in response to inquiries regarding where he and L.W. engaged in sexual activity, Defendant stated that he "plead[s] the Fifth." Later, he suggested that he may be at the station due to the "shaky" nature of his relationship with L.W.,

---

[3] In fact, ten minutes of the interview are spent by the officers (off camera) attempting to manipulate the devices in order to record their serial numbers. During this time, Defendant offers his assistance, and makes no attempt to limit the scope of his consent. In addition, in response to inquiries, Defendant advises the officers that there is no password on his phone; he provides the officers with the password to his iPad; and with respect to his Facebook account, he indicates that the officers can access it as long as they have Wi-Fi.

4

citing, *inter alia*, an incident occurring a few days earlier where she had told his mother that he was "slandering her name around town." He defended himself against this allegation by stating that he is not the kind of person to talk about others' business. Following the video interview, the officers returned Defendant to his parents' home.

In accordance with the Special Victims Unit's procedure, Defendant's electronic devices were turned over to the Department of Homeland Security to be searched. Defendant was not informed that this was standard procedure, or that any entity other than the VIPD would be conducting the search. Forensic Agent Dennis Carter examined Defendant's phone and recovered seven videos encrypted in an application. (Dkt. No. 17 at 2). Lt. Joseph testified that the recovered videos depict that Defendant engaged in sexually explicit activities with two minor females.

## II. DISCUSSION

In his Motion to Suppress, Defendant argues that his consent to search was involuntary, and, in the alternative, that the consent was limited to the Virgin Islands Police Department. (Dkt. No. 11 at 2). Defendant maintains in his Motion that because the officer told Defendant that he would be arrested if he failed to sign the consent to search form; his will was overborne under the totality of the circumstances test. (*Id.*). However, Defendant conceded at the hearing that none of the evidence indicated that any such threat was made. Even if his will was not overborne, Defendant asserts that his written consent was limited to "members of the Virgin Islands Police Department, Government of the Virgin Islands," and therefore any fruits of a search by the Department of Homeland Security should be suppressed. (*Id.*).

In its Opposition, the Government argues that Defendant voluntarily consented to the search of his cell phone and iPad. (Dkt. No. 17 at 2-3). Looking at the totality of the circumstances, including the duration of the encounter and Defendant's relevant characteristics, the Government concludes that Defendant's consent was voluntarily given. (*Id.*). In support of its position, the

5

Government points to the following facts: Defendant told Detectives he was willing to speak with them; he signed both an advice of rights and waiver form; he orally consented to the search and signed a form to that effect; the interview lasted approximately an hour and twenty minutes; and Defendant was allowed to leave following the interview. (Dkt. No. 17 at 3). Further, the Government argues that Defendant placed no restriction on his consent, and it was proper for the Department of Homeland Security to conduct the search. (*Id.* at 4-8). The Government cites an unpublished 2006 case from the District of New Jersey for the proposition that "consent lawfully obtained from Defendant to search his property acts to negate any expectation of privacy by Defendant in that property," and therefore argues that any search conducted by the Department of Homeland Security was permissible. *United States v. Pelle*, 2006 WL 436920, *2 (D.N.J., Feb. 17, 2006).

### A. Applicable Legal Standards

The Fourth Amendment protects individuals from "unreasonable searches and seizures." U.S. Const. amend. IV; *see also* 48 U.S.C. § 1561 (section of the Revised Organic Act that makes the Fourth Amendment applicable to the Virgin Islands). "Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010) (citing *California v. Acevedo*, 500 U.S. 565, 580 (1991)). Evidence obtained as a result of an unreasonable search and seizure is inadmissible at trial and must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963) (requiring exclusion and suppression of evidence obtained as the result of an unlawful search and seizure).

One time-honored exception to the warrant requirement is where a search is conducted pursuant to consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973). The Government bears

6

the burden of demonstrating both the scope and voluntariness of consent. *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968).

### B. Validity of Consent

A search pursuant to valid consent is "reasonable" under the Fourth Amendment and therefore neither a warrant nor probable cause is required. *Schneckloth,* 412 U.S. at 219 (citing *David v. United States*, 328 U.S. 582, 593 (1946)); *United States v. Stabile*, 633 F.3d 219, 230 (3d Cir. 2011). To justify a warrantless search based on consent, the Government "has the burden of proving [by a preponderance of the evidence] that the consent was . . . freely and voluntarily given." *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (quoting *Bumper*, 391 U.S. at 548 (internal quotation marks omitted)); *see also United States v. Matlock*, 415 U.S. 164, 177 (1974). There is "no talismanic definition of voluntariness, mechanically applicable to the host of situations where the question has arisen; instead, we determine the voluntariness of consent by examining the totality of the circumstances." *Price*, 558 F.3d at 278 (citing *Schneckloth*, 412 U.S. at 224). Such inquiry includes "the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment." *Id*. (citing *Schneckloth*, 412 U.S. at 226). The "setting in which the consent was obtained," as well as "the parties' verbal and non-verbal actions" are also relevant. *Id*. (quoting *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003) (internal quotation marks omitted)).

"Fundamental to the concept of voluntariness is that valid consent must not be coerced." *United States v. Hynson*, 451 F. App'x 91, 94 (3d Cir. 2011). In *Hynson*, the Defendant alleged that the fruits of a search should be suppressed on the ground that the consent to search given by an accomplice had been involuntary. *Id.* The Third Circuit found that, even if officers had threatened to arrest the accomplice if she refused to allow the search, "this factor is not

7

dispositive." *Id.* at 95. Considering the totality of the circumstances, the Court noted that the accomplice "invited the marshals into the residence, willingly conversed with them, was given notice of her *Miranda* rights, and signed the consent form which expressly notified her of the right to refuse consent." *Id.* The Court concluded that "taken together, these facts demonstrate [the accomplice]'s consent was voluntary." *Id.* Similarly, in *United States v. Price*, 558 F.3d 270, 279-80 (3d Cir. 2009), the Third Circuit found consent to be voluntary where the person consenting was on her own property, few officers were present, their weapons were not drawn, "[n]o one threatened, coerced or promised anything to [her]," and consent was granted without any reluctance or hesitation whatsoever.

This Court has also addressed the issue of voluntariness of consent. In *United States v. Bailey*, this Court found that the defendant had not been coerced into consenting to a search. *United States v. Bailey*, 2015 WL 327198, at *5 (D.V.I. Jan. 23, 2015). In its analysis, the Court noted that there was evidence that no guns were pointed at Bailey; no one threatened to arrest anyone else in the home; no one raised their voice; Bailey was calm and not agitated; and Bailey was *Mirandized* and demonstrated knowledge that he could refuse consent by circumscribing the scope of his consent. The Court ultimately concluded that the conduct of the agents "lacked coercion." *Id.*

Similarly, in *United States v. Lubrin*, the Court found that consent was voluntarily given after Lubrin was arrested and *Mirandized*. *United States v. Lubrin*, 2015 WL 361796, at *10 (D.V.I. Jan. 28, 2015). In reaching its conclusion, the Court considered that Lubrin was not verbally or physically threatened, and that there was an absence of the "'signature signs of coercion,' such as a 'display of force,' drawing of guns, or trying to 'deceive or intimidate [Lubrin] into signing the consent form.'" *Id.* (citing *United States v. Thach*, 411 F. App'x 485, 489 (3d Cir. 2011)).

8

In the instant matter, Defendant was 41 years old at the time that he granted consent to search his devices. Although counsel for Defendant argued that the Government failed to present evidence regarding Defendant's level of education or intelligence, a review of the video interview leads the Court to conclude that Defendant is of at least average intelligence. He is responsive to the officers' questions and his responses are both intelligible and relevant to the officers' inquiries. He demonstrates an understanding of his rights by invoking his Fifth Amendment rights in response to a probing personal question. He defends himself against L.W.'s alleged allegations of "slander" by stating that he is not one to talk about others' business, evidencing at least a basic understanding of the legal term. The video interview thus undermines defense counsel's suggestions that Defendant might be "retarded" or have some other noteworthy deficiency in intelligence or education.[4] Nothing about Defendant's personal characteristics suggest that his will would be more easily overborne than that of the average person.

Officer Richardson-Fieulletaeu testified that Defendant was interviewed at the police station, and he was advised of his *Miranda* rights before he gave consent to search. The Court recognizes that a police station is generally considered more coercive than other environments, and that the Third Circuit has cautioned that "'station house' interrogations should be scrutinized with extreme care." *United States v. Jacobs*, 431 F.3d 99, 105 (3d Cir. 2005). However, the fact that the interview took place at a police station, standing alone, is not dispositive on the issue of voluntariness. *United States v. Mendenhall,* 446 U.S. 544, 559 (1980) (holding that where "respondent's presence in the office was voluntary," and there was "little or no evidence" of coercion, the fact that consent was granted while in a DEA office did not support a finding of

---

[4] It also appears from the video that Defendant does not suffer from any major deficiency due to any purported lack of education. In any event, Officer Richardson-Fieulletaeu testified that Defendant's *Miranda* rights were verbally communicated to him, rendering his literacy irrelevant.

9

involuntariness); *U. S. ex rel. Anderson v. Rundle*, 274 F. Supp. 364, 370 (E.D. Pa. 1967), *aff'd,* 393 F.2d 635 (3d Cir. 1968) (finding that consent to search vehicle given at police station was voluntary). Further, Defendant had been advised of his *Miranda* rights prior to granting consent to search and the consent form itself informed him of his right to refuse consent, both of which support a finding of voluntariness. *See Bailey*, 2015 WL 327198, at *6 ("Perhaps most importantly, in terms of intervening circumstances, Bailey was advised of his *Miranda* rights before the agents asked for his consent to search."); *Lubrin*, 2015 WL 361796, at *10; *Hynson*, 451 F. App'x at 94 (considering, *inter alia*, that the consenting individual received "notice of her *Miranda* rights, and signed the consent form which expressly notified her of the right to refuse consent" in holding consent was voluntary).

The Government asserts that Defendant's police station interview lasted approximately an hour and twenty minutes (Dkt. No. 17 at 2). The recorded portion of the interview lasts about forty-five minutes. An interview of that duration does not undermine the voluntariness of Defendant's consent. *See United States v. Mendoza*, 334 F. App'x 515, 518 (3d Cir. 2009) ("[A]lthough Mendoza had been detained for approximately an hour and fifteen minutes by the time he signed the written consent, the length of Mendoza's detainment did not alter the voluntary nature of his consent."). The evidence does not reveal that questioning was repeated or that physical punishment was used, nor does Defendant so allege. The Court's review of the video interview suggests that officers asked for consent only once, and it was immediately given. Neither the length nor the mode of questioning support a finding that Defendant's consent was involuntary.

Finally, Defendant was unable to point to any coercive conduct by the officers. Defendant consented to going to the police station, and brought along his electronic devices upon request. Once at the station, the officers did not raise their voices, block or lock the doors to the room, place Defendant under arrest, handcuff Defendant, or point their weapons at Defendant. The absence of

such signs of coercion also weighs against a finding of involuntariness. *Price*, 558 F.3d at 279-80; *Lubrin*, 2015 WL 361796, at *10; *Bailey*, 2015 WL 327198, at *5.

Upon consideration of the totality of the circumstances, the Court concludes that the Government has met its burden of showing, by a preponderance of the evidence, that Defendant's consent was voluntary.[5] Accordingly, the Court will not suppress the videos found on Defendant's electronic devices for lack of consent, and rejects Defendant's arguments to that effect.

**C. Scope of Consent**

With regard to the scope of the consent, the Supreme Court has held that "[a] suspect may of course delimit as he chooses the scope of the search to which he consents." *Florida v. Jimeno,* 500 U.S. 248, 252 (1973). However, courts have refused to find that consent is limited to a particular agency or individual, even where a defendant signs a consent form authorizing search by a particular agency or officer. *United States v. Pelle*, 2006 WL 436920, at *2-3 (D.N.J. Feb. 17, 2006) (surveying cases); *United States v. White,* 617 F.2d 1131, 1134 (5th Cir.1980) (defendant was not harmed because a search was conducted by different officers than those listed on the consent form); *United States v. Rubio,* 727 F.2d 786, 797 (9th Cir.1983) (a consent search may not be "validly qualified by the number of officers allowed to search," as opposed to the valid limitation of the physical bounds of an area to which an individual consents to a search.).

Such holdings generally rest on the principle that "[o]nce consent has been obtained from one with authority to give it, any expectation of privacy has been lost." *Pelle*, 2006 WL 436920, at *3 (citing *Rubio,* 727 F.2d at 797); *see United States v. Betts,* 16 F.3d 748, 755 (7th Cir.1994) (same); *Wildauer v. Frederick County,* 993 F.2d 369, 371 (4th Cir. 1993) (same) (citing *Rubio,* 727 F.2d at 797); s*ee also Hoffman v. County of Delaware,* 41 F.Supp.2d 195, 214

---

[5] Although Defendant sought through cross-examination by counsel to challenge or otherwise discredit the testimony of the officers, the Court finds their testimony credible.

(N.D.N.Y.1999), *aff'd,* 205 F.3d 1323 (2d Cir. 2000) ("[H]aving given consent to [one law enforcement officer], Hoffman no longer had any expectation of privacy and, accordingly, suffered no violation of his Fourth Amendment rights. The fact that [the second law enforcement officer] was a member of a different police department than [the first] or was acting in his position as Special Investigator for the County Department of Social Services . . . does not require a different result.").

Applying these principles to a consent to search form authorizing a specific investigator to search an electronic device for evidence of child pornography, the *Pelle* Court concluded that "where a defendant willingly consents to a search, that search may not be invalidated solely because of how, or by whom, the search is conducted." *Pelle*, 2006 WL 436920, at *4. The critical point, in the view of the *Pelle* Court, was that the defendant "understood and agreed that a law enforcement investigator would be searching the contents of his personal computer for evidence of child pornography." *Id.*; *Jimeno*, 500 U.S. at 251 ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?") (citing cases). As the "consent to the search of his computer for evidence of child pornography could reasonably be understood to permit the county prosecutor to obtain assistance from another agency, 'the Fourth Amendment provides no ground for requiring a more explicit authorization.'" *Pelle*, 2006 WL 436920, at *4 (quoting *Jimeno,* 500 U.S. at 252).[6] On this reasoning, the court denied Pelle's motion to suppress evidence found on his laptop computer by

---

[6] The Court further found that "[s]ince the distribution of child pornography is a federal crime, it was reasonable and appropriate for the local authorities to obtain such assistance in their investigation." *Pelle*, 2006 WL 436920, at *4.

12

the Department of Homeland Security, despite the fact that his consent to search form was limited to a specific investigator of a county prosecutor's office. *Id.* at 5.[7]

The *Pelle* Court found no case "confining consent to a single law enforcement agency." *Id.* at 4. As represented at the suppression hearing by counsel, nor has Defendant. While creative, counsel's unsupported argument that Defendant's consent was purportedly given only to VIPD based on Defendant's belief that VIPD had insufficient resources to discover content he considered to be hidden on his electronic devices does not present a constitutional violation.

While Defendant correctly noted that *Pelle* is not mandatory authority, this Court finds the reasoning in the *Pelle* decision to be persuasive.[8] As the video interview reveals, Defendant gave his consent verbally prior to the time indicated on the consent to search form, and made no attempts during the interview to circumscribe his consent in any manner. A reasonable person would not have understood his consent to be limited to members of the VIPD based on the exchange between Defendant and the officers at the time Defendant gave his verbal consent, notwithstanding any language on the consent form—which he apparently had yet to see—to the contrary. *Jimeno*, 500 U.S. at 251. Defendant's consent eliminated his expectation of privacy in his electronic devices; therefore, the search conducted by the Department of Homeland Security was valid, and Defendant's Motion will be denied. To hold otherwise would be to impose a "sort of superstructure

---

[7] The *Pelle* Court noted that, although the form was limited by its language to the interviewing investigator, she had informed Pelle that the search would require the assistance of a computer expert. *Pelle*, 2006 WL 436920, at *1 n.1. However, the broad language of the Court's opinion confirms that the *Pelle* decision was not premised on that fact.

[8] In support of Defendant's argument against following *Pelle*, counsel argued that consent to search is analogous to granting a power of attorney or engaging a particular surgeon. The Court finds these arguments inapposite, as in both of those situations a particular *person* is granted permission based on their characteristics. That is unlike the context of a consent to search, the motivation of which normally bears no relationship to the particular officer or agency granted permission to search.

to the Fourth Amendment's basic test of objective reasonableness" that is not required by the Fourth Amendment and has been rejected by the Supreme Court. *Id.* at 252.

### III.  CONCLUSION

For the reasons stated above, the Court will deny Defendant's Motion to Suppress. An appropriate Order accompanies this Memorandum Opinion.

Date: May 9, 2017                                        _____/s/_____
                                                                          WILMA A. LEWIS
                                                                          Chief Judge